(118 App. Div. 883)

DELAHUNTY v. CANFIELD.

(Supreme Court, Appellate Division, First Department. April 19, 1907.)

1. CONTRACTS—COMPENSATION OF ATTORNEY—COLLECTION OF GAMBLING DEBTS.
   A contract by which defendant, who was a common gambler, agreed to pay plaintiff 25 per cent. of all claims he might collect which were defended or objected to on the ground that they were gambling debts, amounted to the employment of an attorney to collect the fruits of a crime for compensation consisting of a percentage thereof, and was therefore against public policy and void.

2. ATTORNEY AND CLIENT—COMPENSATION—QUANTUM MERUIT.
   Defendant placed three notes, each for $100,000, against a minor, in plaintiff's hands for collection. It was claimed that the notes were given principally for borrowed money, and defendant authorized a settlement for $100,000, if no more could be obtained. Plaintiff settled the claim for $130,000. Held, that plaintiff was not entitled to more than $10,000 for his services on a quantum meruit.

Appeal from Trial Term, New York County.

Consolidated actions by John Delahunty against Richard A. Canfield. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Modified and affirmed.

See 94 N. Y. Supp. 815.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

H. Snowden Marshall (George Gordon Battle, on the brief), for appellant.

Edmund L. Mooney (S. Hanford, on the brief), for respondent.

LAUGHLIN, J. The complaint sets forth two causes of action for legal services, which were embraced in separate actions and consolidated into one. The first cause of action is for services rendered in collecting the sum of $130,000 on three notes, each for $100,000. Plaintiff sought to bring this collection within the terms of a special agreement, made between him and the defendant some 10 years prior to the rendition of the services, by which he was to receive 25 per cent. on the collection of any notes, obligations, or claims that might be turned over to him by the defendant for collection, to which the defense of gambling should or might be interposed. These notes were not placed in the hands of the plaintiff by the defendant for collection in the usual manner in which a client places claims in the hands of his attorney. The negotiations which resulted in the collection of $130,000 on the notes were instituted, not by the defendant, but by an offer on the part of the maker of the notes, through an attorney, to the plaintiff, to compromise the defendant's claims thereon, and this before the notes had become due or payable. The notes were given principally for borrowed money, and the ground upon which a deduction from the face of the notes appears to have been claimed was the infancy of the maker. It does not appear what part of the indebtedness, if any, was incurred, or claimed to have been incurred, in gambling. The defendant authorized the plaintiff to negotiate a settlement for $100,000, if no more could be obtained. The plaintiff obtained

for his client $30,000 more than the latter was willing to accept, and therefore his services were very valuable in the result obtained. It is not at all clear, however, that these notes, in any view of the case, fall within the terms of the special contract for 25 per cent. of the amount collected. Some claims had been placed in the hands of the plaintiff under the special agreement many years before, but no collection had been made thereunder. At the time the negotiations which resulted in the settlement of these notes were instituted the defendant was in Europe, having discontinued the pursuit of gambling, which he had followed in the city of New York for many years, and had placed all of his affairs, so far as the services of an attorney were required, in the hands of the plaintiff, under general authority to take such steps as he might deem advisable for the protection of the rights and interests of the defendant. In the circumstances there is much force in the contention made in behalf of the appellant that the special agreement with respect to collections terminated with this general employment.

The plaintiff testified that he paid over the $130,000 collected by him to the defendant's manager, and at the same time requested and received $5,000 on account for the services rendered. The defendant's manager testified that the plaintiff at the time stated, in substance, that his charges for collecting the notes would be $10,000, $5,000 of which he directed should be credited upon obligations held by the defendant against him for borrowed money, and $5,000 of which he desired and received in cash, and that this charge for the services was communicated to and approved by the defendant. The defendant admits that he acquiesced in the charge of $10,000, and his manager testified that at a subsequent interview between them and plaintiff, upon the rendition of plaintiff's bill, this charge of $10,000 was expressly agreed upon by the parties. Plaintiff, when first called as a witness, testified, in substance, that at the time he received the $5,000 in cash from the defendant's manager, nothing more was said with respect to his charges for the collection than has already been stated in this opinion in giving his version of that interview. After the manager of the defendant testified that plaintiff stated that he would charge $10,000 for collecting the notes, and testified concerning the allusion to and acquiescence in this charge at a subsequent interview between plaintiff and defendant, plaintiff was called to the stand in rebuttal, but made no denial of the conversation between him and the defendant and the latter's manager, concerning which he had not been interrogated when first on the stand; and he made no specific or further denial of the testimony of defendant's manager with respect to his having made a charge of $10,000 for his services in collecting the notes. The court submitted to the jury the question as to whether the plaintiff at that time agreed to accept $10,000 for the services in collecting the notes, and the verdict shows that the jury found that he did not; for they found for the plaintiff for the full amount demanded in each cause of action.

In the circumstances, we think that, in the absence of a denial by the plaintiff of the testimony of defendant's manager with respect to plaintiff's having made a charge of $10,000 for these services, which was acquiesced in by defendant, the verdict should not be permitted

to stand in the amount rendered. In the judgment which has been entered upon the verdict, the plaintiff has been allowed $32,500, which is 25 per cent. of the $130,000 collected. We are of opinion that the verdict in this regard is not fairly sustained by the evidence, and, unless the plaintiff is willing to reduce the recovery by the sum of $22,500, together with interest thereon from the 17th day of December, 1904, the date of the rendition of his bill, being the date from which interest was figured, which will be in accordance with the proof as we gather it from the record, as to the first cause of action there should be a new trial.

The evidence is sufficient to support the recovery on the second cause of action, and we think no other error sufficiently serious to require a new trial was committed.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event, unless within 10 days from the service of the order to be entered hereon the plaintiff shall file a stipulation consenting that the judgment be modified by reducing the recovery by the sum of $22,500, together with interest thereon from the 17th day of December, 1904; and, if such stipulation shall be filed, the judgment will be modified accordingly, and, as so modified, it and the order will be affirmed, without costs of the appeal to either party.

PATTERSON, P. J., concurs.

SCOTT, J. So far as concerns the plaintiff's first cause of action for collection $130,000 on notes for $300,000, the plaintiff sues on an alleged special agreement, made 10 years before, whereby defendant promised to pay to plaintiff 25 per cent. of all claims he might collect which were defended or objected to on the ground that they were gambling debts. If such a contract was in fact made, it was in our opinion contrary to public policy and void, and the court should give no aid to its enforcement. The defendant was a common gambler, pursuing his vocation in a house maintained by him for the purpose in the city of New York, and also at other places. The statutes of this state have placed gambling, such as the defendant pursued, in the category of crimes, and have expressly declared that all evidences of indebtedness, of which the consideration, in whole or in part, is money lost at play, shall be utterly void. If gambling is criminal, illegal, and immoral, and the money lost thereat is for that reason made uncollectible, it seems to me to be perfectly clear that an agreement to compensate a lawyer for collecting such a claim by paying him a percentage of the amount recovered must be treated as itself illegal and unenforceable. Such an agreement amounts to nothing more than the employment of an attorney to collect the fruits of a crime for a compensation consisting of a percentage of such fruits. In the present case, not only was the claim tainted with illegality, but the person against whom it was made is shown to have been a boy under age. If, therefore, the plaintiff's claim upon his first cause of action is to rest upon such a contract between himself and the defendant, he should have been nonsuited. If, on the other hand, the claim which he collected was, as the defendant

says, mainly or partly for borrowed money, as to which the defense that it was for a gambling debt would be unavailing, the case did not fall within the terms of the alleged special agreement, and $10,000 is certainly a very liberal allowance.

The amount allowed by the jury, and now about to be confirmed, for the services, mainly futile and often injudicious, included in the second cause of action, appears to be, to say the least, very generous; but as to that question we are not disposed to set up our own judgment against that of the jury.

We therefore concur in the disposition of the appeal indicated in the opinion of Mr. Justice LAUGHLIN.

INGRAHAM and CLARKE, JJ., concur.